# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

LINDA KAY ANDERSON,           )
                              )
       Plaintiff,            )
                              )
v.                            )    Case No. CIV-16-61-SPS
                              )
NANCY A. BERRYHILL,           )
Acting Commissioner of the Social )
Security Administration,[1]   )
                              )
       Defendant.            )

## OPINION AND ORDER

The claimant Linda Kay Anderson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner is hereby REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born February 15, 1956, and was fifty-eight years old at the time of the administrative hearing (Tr. 29, 144). She earned her GED, and has worked as a radio dispatcher, collection clerk, bartender, and correction officer (Tr. 23-24, 167). The claimant alleges she has been unable to work since November 21, 2013, due to diabetes, high blood pressure, chronic obstructive pulmonary disease (COPD), scarring on her heart, and many other medical problems (Tr. 167).

### Procedural History

On November 21, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Doug Gabbard, II, conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 6, 2015 (Tr. 14-24). The Appeals Council denied review, so the ALJ's opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, she could lift/carry ten pounds frequently and twenty pounds occasionally, stand/walk and sit each for six hours in an eight-hour workday,

except that she could only frequently balance and stoop; only occasionally climb ramps and stairs, kneel, crouch, and crawl; and could not climb ladders, ropes, or scaffolds (Tr. 18). The ALJ thus concluded that the claimant could return to her past relevant work as a dispatcher and as a collection clerk (Tr. 23-24).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly assess the opinion of her treating physician, Dr. Larry Lewis, and (ii) failing to account for all her impairments in the RFC assessment, particularly her mental limitations. The Court agrees that the ALJ failed to properly assess the claimant's RFC at step four, and the decision of the Commissioner is therefore reversed.

The ALJ determined that the claimant had the severe impairments of chronic pain and mild degenerative joint disease of the left knee, as well as the nonsevere impairments of COPD/emphysema, essential hypertension, diabetes mellitus, chest pain and scarring of the heart, left leg problems, GERD, profuse perspiration with minimal exertion, rash, knee pain, pneumonia, dizziness, tobacco abuse, sleeping problems/insomnia, anxiety, and panic attacks (Tr. 16-17). The record reflects that the claimant was largely treated at the Mercy Clinic in McAlester, Oklahoma, by Dr. Lewis (Tr. 245-279, 303-325, 331-340, 351-356, 375-392). Treatment notes mostly reflect recitation of the claimant's medications, and indications regarding prescription refills, but also contain references to the claimant's leg pain and swelling (Tr. 274, 333, 352, 390), as well as her depression and anxiety (Tr. 333, 352, 353).

Treatment records from an urgent care clinic in McAlester, Oklahoma reflect that the claimant went in for continuing left lower leg pain, largely in the knee, noting that there was no precipitating event and that the claimant also had peripheral neuropathy (Tr. 293). An x-ray of the knee on November 27, 2013 revealed mild degenerative change greatest in the medial compartment, with no evidence of acute fracture or dislocation (Tr. 300-301). Additionally, the claimant reported to urgent care with a cough that had worsened, and was associated with being a smoker and brought on by aggravating factors of cold air, etc. (Tr. 368). She was assessed with atypical pneumonia, and a chest x-ray revealed emphysema (Tr. 371, 373).

On April 23, 2014, Dr. Lewis completed a number of forms related to the claimant's RFC (Tr. 343-350). As relevant to this appeal, Dr. Lewis indicated that the claimant would be absent from work more than four days per month due to her impairments (Tr. 343, 349). Furthermore, he indicated, *inter alia*, that the claimant: (i) could not stand and/or walk up to two hours in an eight-hour workday, (ii) could not sit for up to six hours in an eight-hour workday, (iii) required elevation of her legs, (iv) could not lift /carry ten pounds, (v) could not sustain activity at a pace and with the attention to task as would be required in the competitive workplace, and (vi) her impairments would cause her to take unscheduled breaks (Tr. 344). He also noted that she had impairments that would impose non-exertional impairments on her, due to COPD and chronic back pain (Tr. 344). The objective findings he pointed to were the claimant's persistently elevated blood pressure despite numerous medications, peripheral edema, and an elevated A1C (Tr. 344). He indicated that her level of pain would affect her

ability to work, and that her chronic back and neck pain were consistent with the pain she experienced (Tr. 345). On a Physical RFC Questionnaire, Dr. Lewis indicated that the claimant's diagnoses included diabetes mellitus II, hypertension, back and neck pain, and depression (Tr. 346). He indicated that the claimant's depression contributed to the severity of her physical impairments, and that the claimant's experience of pain was severe enough to frequently interfere with her attention and concentration (Tr. 347). He found she was incapable of even low stress jobs, that she could not walk any city blocks without rest or severe pain, that she could sit up to one hour at a time, stand up to fifteen minutes at a time, and sit and stand/walk less than two hours in an eight-hour workday (Tr. 347-348). He indicated that she needed the ability to shift positions at will and to take unscheduled breaks frequently, and that the breaks would last fifteen to thirty minutes (Tr. 348). He further indicated that her legs needed to be elevated 90% or more of the day (Tr. 348). He checked boxes indicating that the claimant could only rarely lift/carry less than ten pounds, that she could only occasionally perform actions regarding moving the neck and turning the head, and that she could rarely twist but never stoop, crouch, or climb ladders/stairs (Tr. 349). Finally, he also noted that she had limited tolerance of temperature changes, and no tolerance for dust, fumes, or gases (Tr. 350).

There is no consultative examining opinion in the record. State reviewing physicians found that there was no medical evidence in the record to find a medically determinable mental impairment present (Tr. 70, 83). Additionally, state reviewing physicians found that the claimant could perform light work with only frequent balancing and stooping, and occasional climbing ramps/stairs/ladders/ropes/scaffolds, kneeling,

crouching, and crawling (Tr. 71-72, 84-85). Neither state reviewing physician found the claimant had manipulative or environmental limitations (Tr. 71-72, 84-85).

The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

In his written opinion, the ALJ summarized much of the evidence in the medical record at step two, and at step four summarized the claimant's hearing testimony. As to Dr. Lewis's opinion, the ALJ found it was not supported by the evidence in the case, and found his opinion was entitled to diminished weight (Tr. 21-22). In support, he found that Dr. Lewis only "saw her every two to three months for medication refills with no physical or mental status examinations reported at most office visits," there was no evidence he prescribed her pain medication although he opined her pain affects her activities, and he did not refer the claimant to any other specialists (Tr. 21-22). He then stated that "[a]ll in all," he found Dr. Lewis's opinions to be "more an act of courtesy to a patient of long-standing [sic], rather than a genuine medical assessment of discrete functional limitations[.]" (Tr. 22). He then found that the opinions from the state reviewing physicians were "expert opinion evidence of a non-examining source," and afforded their opinions great weight (Tr. 22).

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by her treating physicians. Although the ALJ noted the proper analysis at the outset of step four, he failed to properly apply it when he ignored the (admittedly sparse) evidence in the record, particularly related to the claimant's lower extremity edema and her depression, and instead imposed an RFC that would avoid a finding of disabled, while improperly rejecting the evidence as to her limitations, particularly related to standing and walking. *See Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004) ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and

must be weighed using all of the factors provided in [20 C.F.R. § 416.927]."), *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003).

Moreover, the ALJ erred in failing to properly assess her mental impairments. "Where there is evidence of a mental impairment that allegedly prevents a claimant from working, the [ALJ] must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § [416.920a] and the Listing of Impairments and document the procedure accordingly." *Cruse v. United States Department of Health & Human Services*, 49 F.3d 614, 617 (10th Cir. 1995), *citing Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1048 (10th Cir. 1993). To properly apply this special psychological review technique (PRT), the ALJ must first determine if the claimant has a "medically determinable mental impairment," 20 C.F.R. § 416.920a(b)(1), and then determine the degree of function the claimant has lost as a result of the impairment by assessing his level of functioning in four broad areas: (i) activities of daily living; (ii) social functioning; (iii) concentration, persistence, or pace; and (iv) episodes of decompensation. 20 C.F.R. § 416.920a(c)(3). *See also Cruse*, 49 F.3d at 617. Furthermore, the ALJ must specifically document his PRT findings. *See Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994) ("[T]here must be competent evidence in the record to support the conclusions recorded on the [PRT] form and the ALJ must discuss in his opinion the evidence he considered in reaching the conclusions expressed on the form."), *quoting Woody v. Secretary of Health and Human Services*, 859 F.2d 1156, 1159 (3d Cir. 1988). *See also* 20 C.F.R. §§ 416.920a(e)(4) ("At the administrative law judge hearing . . . the written decision must incorporate the pertinent findings and

conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)").

In finding that the claimant suffered from no severe mental impairments, the ALJ failed to document his findings related to the four areas of functioning with respect to her alleged impairment of depression. Further, the ALJ found "no medical documentation" of the claimant's depression, but this is erroneous. For example, Dr. Lewis noted on several occasions that she suffered from depression and was treated with medication. *See Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is significantly probative."). The ALJ apparently discounted this evidence when he summarized the evidence then found without explanation that her depression, anxiety, and panic attacks were not medically determinable impairments. *See, e. g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 739 (10th Cir. 2007) ("[W]e have found no case authority requiring [a claimant] to obtain medical treatment from [a specialist in the mental health profession] before an ALJ can find that she has a severe mental impairment."). There is also some indication that the claimant did not pursue any further treatment–mental or physical–because she was unable to afford it, which further undermines the ALJ's decision. *See, e.g., Miranda v. Barnhart*, 205 Fed. Appx. 638, 642 (10th Cir. 2005) ("'[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations

that the individual may provide.'"), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *7; *Thomas v. Barnhart*, 147 Fed. Appx. 755, 760 (10th Cir. 2005) ("'[T]he medicine or treatment an indigent person cannot afford is no more a cure for his condition than if it had never been discovered . . . To a poor person, a medicine that he cannot afford to buy does not exist.'"), *quoting Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

Because the ALJ failed to properly evaluate *all* the claimant's impairments and the opinion evidence of record, the decision of the Commissioner is therefore reversed and the case remanded to the ALJ for further analysis of the claimant's impairments. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 22nd day of September, 2017.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**